591 So.2d 232 (1991)
Judith RIMER, the Personal Representative of the Estate of Gretel Loeb, Deceased, Appellant/Cross Appellee,
v.
SAFECARE HEALTH CORPORATION, Appellee/Cross Appellant.
No. 90-2115.
District Court of Appeal of Florida, Fourth District.
July 3, 1991.
Thomas D. Lardin, Thomas D. Lardin, P.A., Fort Lauderdale, for appellant, cross appellee.
James D. Demet, Klein & Tannen, P.A., Hollywood, for appellee, cross appellant.
ANSTEAD, Judge.
Appellant, Judith Rimer, the personal representative of the Estate of Gretel Loeb, appeals from a summary judgment in favor of appellee, Safecare Health Corporation (Safecare), the defendant below in an action for Mrs. Loeb's wrongful death. The trial court held that Safecare was entitled to a set-off in the amount paid by its employee-doctor, Donald C. Howard, in settlement of a preceding medical malpractice action for personal injuries filed by Mrs. Loeb while she was still alive. Safecare cross-appeals the court's determination that the release given to the doctor did not have the legal effect of also releasing Safecare *233 from liability for the wrongful death action. We disapprove of the set-off and affirm on the issue raised on cross-appeal.

FACTS
Mrs. Loeb filed a personal injury action in 1988 against Dr. Howard and Safecare alleging liability based upon Howard's neglect, as well as an independent claim against Safecare unrelated to Howard's alleged neglect. Subsequently, in September of 1989, Mrs. Loeb settled her claim against Dr. Howard and his medical malpractice insurer for $150,000.00. The settlement specifically excluded Safecare from its terms. Pursuant to the settlement, Mrs. Loeb and Dr. Howard stipulated to the entry of an order of dismissal as to Dr. Howard. Nine days after the settlement, Mrs. Loeb died. Consequently, the original complaint was amended to seek damages against Safecare under the Florida Wrongful Death Act, and Judith Rimer, as special administrator for Mrs. Loeb's estate, was substituted as plaintiff.
Safecare filed a motion for summary judgment claiming (1) its exoneration from liability based upon the legal effect of the Howard release; and (2) its entitlement to a set-off for the Howard settlement. The court denied summary judgment as to the legal effect of the release, but granted it as to the set-off issue. This resulted in a judgment for Safecare, since the Estate stipulated that the amount of its damages would not exceed the amount received from Howard.

SET-OFF AND RELEASE
The Estate concedes that it is not entitled to recover any damages for wrongful death against Safecare predicated upon any actions or inactions of Dr. Howard. Instead, it seeks to proceed only on its alleged independent claim against Safecare. Hence, any issue as to Safecare's liability for its employee's conduct is moot.
The statute under which the court granted the set-off is Section 768.041, Florida Statutes (1989), which in part provides:
(1) A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.
(2) At trial, if any defendant shows the court that the plaintiff, or any person lawfully on his behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of the rendering of the judgment and enter judgment accordingly ...
To the same effect is Section 768.31(5), Florida Statutes (1989), which states in part:
When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; ...
Initially, we note that both the terms of the Howard release and the provisions of these statutes expressly provide that a joint tortfeasor is not released by the execution of a release in favor of another tortfeasor. Accordingly, we find no error by the trial court in holding that Safecare was not discharged by execution of the Howard release.
The Estate contends that the trial court improperly allowed Safecare the $150,000.00 set-off in the wrongful death action, that amount having been paid by Dr. Howard in settlement of the personal injury claim. The Estate argues that section 768.041 authorizes a set-off only for a settlement with another tortfeasor for the damages recoverable in the same cause of action. Accordingly, since there are two *234 different actions involved here  a personal injury action and a wrongful death action  the set-off provisions of sections 768.041 and 768.31 should not apply.
On the other hand, Safecare contends that it is not that clear that set-off is only appropriate in a situation involving recovery by a plaintiff against one of multiple tortfeasors in a single cause of action. Rather, it asserts, sections 768.041 and 768.31 suggest that set-off may be appropriate whenever the plaintiff has received a partial recovery from one of multiple defendants who may be liable in tort for the same injury, whether that injury results in a personal injury action or a claim for wrongful death.
The Estate relies on Devlin v. McMannis, 231 So.2d 194 (Fla. 1970). Devlin held that amounts received from one tortfeasor for payment of a survival claim should not be set off against a recovery against another tortfeasor for the wrongful death of the same victim. The supreme court noted that the set-off statute, section 768.041(2), was designed to prevent duplicate or overlapping compensation for identical elements of damage. Since a survival action and a claim for wrongful death are separate and distinct actions involving different elements of damage, a set-off would be inappropriate. In the present situation, the Estate notes that the only potential duplication would be the medical expenses from the date of the injury to the date of death, and those claims have been waived by the estate.
Although conceding that the case did not involve a set-off, Safecare relies on the Florida Supreme Court's decision in Variety Children's Hospital v. Perkins, 445 So.2d 1010 (Fla. 1983). The father there, as personal representative of the estate of his son, brought an action for his son's wrongful death against the hospital, after having already prevailed in an earlier personal injury action on behalf of his son against the same defendant. The trial court entered summary judgment for the defendant based upon its affirmative defense that any claims against it had already been satisfied in the personal injury suit. The district court reversed on the ground that the right to recover for wrongful death is separate and independent from, rather than derivative of, the injured person's right while living to recover for personal injuries.
In quashing the district court's decision, the supreme court held that the judgment for personal injuries rendered against the same defendant and based on the same tortious conduct, barred the subsequent wrongful death claim. The court concluded:
At the moment of his death the injured minor Anthony Perkins had no right of action against the tortfeasor because his cause of action had already been litigated, proved and satisfied. The recovery awarded by the judgment in the previous personal injury action included damages arising from future expenses. Since there was no right of action existing at the time of death, under the statute no wrongful death cause of action survived the decedent... .
Id. at 1012, (citations omitted). The Variety court noted that "[t]he majority of the courts (in other jurisdictions) have held that a judgment for or against the decedent in an action for his injuries commenced during his lifetime, or the compromise and release of such an action, will operate as a bar to any subsequent suit founded upon his death." W. Prosser, Law of Torts, § 127 (4th ed. 1971), (footnotes omitted). Id. The court thereupon recited the general rule:
... if the injured party sues and recovers damages for his fatal injuries during his lifetime, the cause of action is thereby satisfied and, in the absence of fraud, duress, inadvertence or mistake, no right of action for death remains for the benefit of the persons named in the wrongful death statute.
Id.
Importantly, and unlike Variety, the instant case involves not only the question of a set-off, but also two different tortfeasors, only one from whom the injured plaintiff obtained a recovery before she died. The Variety court noted that one of the paramount purposes of the Florida *235 Wrongful Death Act was to prevent a tortfeasor from evading liability for his misconduct when such misconduct results in death. Prior to her death, Mrs. Loeb was entitled to litigate her personal injury claim against Safecare. Of course, if that claim had proceeded to judgment, Safecare would have been entitled to a set-off for the Howard settlement. However, the death of Loeb precluded her from litigating her personal injury claim against Safecare. Legally, this constituted both good news and bad news for Safecare. Under current law her death extinguished her personal injury claim. However, because she had not settled or otherwise resolved the claim against Safecare, her estate was entitled to bring a wrongful death claim. To bar the wrongful death suit against Safecare as an independent tortfeasor, because of the recovery of personal injury damages against another tortfeasor, would be to allow Safecare to evade liability to Mrs. Loeb's survivors for her wrongful death. Unlike the situation in Variety, the Loeb claim against Safecare was still alive at the time of her death. Hence, it does not appear that the Variety decision is an impediment to the wrongful death action proceeding.
We also believe that to permit a set-off would be to ignore the distinction between an action for personal injury and one for wrongful death, and the respective elements of damages thereof, as well as the difference in the parties entitled to recover. While Devlin was decided at a time that Florida law recognized both survival and wrongful death claims after a death, we believe its reasoning still applies. The right to recover for wrongful death is separate and distinct from, rather than derivative of, the injured person's right while living to recover for personal injuries. The latter is that of the injured person to be secure in his person or property, while the former is the right of the family of the deceased to the companionship and support of the decedent, coupled with the expectancy of a participation in the estate which the decedent might have accumulated but for his untimely death. Accordingly, the Wrongful Death Act creates an independent cause of action in the statutory beneficiaries, and any recovery obtained therein cannot properly be set off by the decedent's settlement of a personal injury claim against a separate tortfeasor.
In accord with the above, we reverse and remand for further proceedings in accord herewith. Notwithstanding our ruling, and because we consider these to be issues of great public importance, we certify the following questions to the Florida Supreme Court:
IS AN ACTION FOR WRONGFUL DEATH AGAINST A JOINT-TORTFEASOR BARRED BY A PRIOR SETTLEMENT OF A CLAIM FOR PERSONAL INJURIES AGAINST ANOTHER TORTFEASOR?
IS THE TORTFEASOR INVOLVED IN THE WRONGFUL DEATH ACTION ENTITLED TO A SET-OFF FOR A SETTLEMENT MADE WITH A JOINT TORTFEASOR IN A PERSONAL INJURY ACTION SETTLED PRIOR TO THE CLAIMANT'S DEATH?
WARNER, J., and STEVENSON, W. MATTHEW, Associate Judge, concur.